*Charles F. Cole,* for appellant.

*Riddick Riffel,* for appellee.

Carleton Harris, Chief Justice.   This appeal re-
sults from a judgment of the Independence County Cir-
cuit Court in which an order of the Workmen's Com-
pensation Commission of February 26, 1958, was af-
firmed; such order denied appellant's claim for perma-
nent partial disability benefits, because of hernia, which
he sustained in the course of his employment with ap-
pellee.   The facts are not in dispute.   The appeal only
questions the construction of the law made by the Com-
mission as it applies to the injury sustained by appel-
lant.

Wesley C. Jobe, a life-long construction worker, was
employed as foreman by appellee herein, in installing a
modern oven in a bakery at Batesville.   A necessary
part of this oven was a steel shaft some 12 or 13 feet

in length, and some four inches in diameter. Mr. Jobe and three other men were carrying the shaft when appellant's foot slipped; the other three were unable to support the shaft, and as Mr. Jobe fell, the end of this shaft fell on him, striking him a severe blow in the abdomen. The medical examination revealed that he had sustained an inguinal hernia on the left side, and it was subsequently discovered that he had sustained an inguinal hernia on the right side. The left hernia was repaired by a radical operation January 3, 1957, and a similar operation repaired the right side on February 21, 1957. In accordance with the provisions of Section 13(e) of the Workmen's Compensation Act (Ark. Stats. Supp. 81-1313 (e)), appellant was provided with the operations and necessary medical treatment, and compensation was paid for twenty-six weeks following the date of injury. Mr. Jobe later, however, filed claim for additional benefits, contending that because of the right hernia suffered, he was permanently partially disabled, and was entitled to benefits for permanent partial disability in excess of benefits provided in the above named section. This claim was controverted, and was denied by the Referee; the full Commission subsequently denied the claim, holding:

"In construing the quoted section of the law, we have consistently held that the maximum 26 weeks duration period enumerated therein does not apply as a limitation where hernia results in complications. By 'complications' we mean infection, or damage to bodily organs or structures separated and distinct from the hernia itself. Where the hernia alone, and its accompanying effects upon the fascia, disables an injured claimant more than 26 weeks, he is not, under our law, entitled to additional compensation. The very occurrence of hernia denotes a weakness of the fascia, and consequently we do not believe a weakened fascia gives rise to entitlement to benefits for permanent partial disability aside and apart from benefits paid for disability for the hernia itself."

From the evidence, the left hernia is well healed, and has caused no difficulty, but the right side (which received most of the impact of the falling shaft) continues to cause pain and discomfort, and appellant testified that he had been unable to do any sort of "heavy" work since the aforementioned accident. The proof reflects that up until the time of the injury, he was able to perform all kinds of construction work, including bulldozing work and heavy lifting, but that he is presently unable to do so; that "he just isn't able to do his customary work around construction jobs." The medical evidence clearly reflects that appellant received a very severe hernia on the right side, and three doctors rated his permanent partial disability to the body as a whole, from 5% to 30%. According to Dr. Robert Calaway of Batesville, in referring to the tissues of, or adjacent to, the abdominal wall:

"The tissues on that side, the fascia on that side, I would say was separated over a length, of I'd say approximately five inches. It was flared out or separated in three to four places the entire length of that thing, and I attributed that to his blow."[1]

Dr. Calaway testified that he was able to repair the hernia and the split fascia with the operation, and that he felt the recovery from the wounds had been satisfactory. He found no evidence of a break in the fascia, but stated " *   *   * that he is going to have to restrict his heavier lifting. *   *   *" Dr. Joel Monfort of Batesville testified:

"This man's fascia over this area above the cord known as the inguinal canal was so thin for about an inch in width and three or four inches long, that you could see the red musculature beneath the thinned out fascia. Now, if you cut this fascia, lay it back, you find another layer of red muscle like this (indicating),

---

[1] According to Dr. Calaway, the fascia " *   *   * is a covering over that muscle that lends strength to the abdominal wall. It is your —I don't know how to tell you, but it is the strength in that abdominal wall. The muscle is not—the muscle bulges and gives, but that fascia is a sheet of thick and strong material. Q. Is it the inner lining of the abdominal wall? A. The covering of the muscle."

and that is what you could see through there it was so thin. That is the term we use, "splayed out," thinned out fascia, from his injury and such pressure from underneath, and so the hernia comes up through this internal canal in here, comes down along the cord to what we call the external canal  *  *  *."

He testified that the fascia is very slow in healing and particularly so when it is torn or cut, and that this hernia was "more extensive than most of them." The doctor further stated that in almost all inguinal hernias, some weakened fascia is found; otherwise, there would likely be no hernia to begin with.

Section 81-1313, provides as follows:

"The money allowance payable to an injured employee shall be as follows:"

Thereafter follows a number of subsections listing various categories of disability, and making provision in each for the amount of compensation due for the particular type of disability mentioned in the subsection. Subsection (e) deals entirely with hernia, first setting out the requirements that must be met in order to qualify for benefits, requiring the employer to provide the necessary medical, surgical, and hospital care to effectuate a cure by radical operation not exceeding $250, and providing for compensation not exceeding a period of 26 weeks.[2]

It is, of course, obvious that benefits arising from hernia are to be determined by this subsection; otherwise, there would be no need for a special section dealing with this particular type of injury. Section 1470, Volume 5, Permanent Edition, of Schneider's Workmen's Compensation Text relates that specific provisions respecting hernia as a compensable injury are found in thirty-two of the Workmen's Compensation

---

[2] The Section then enumerates the duty of the employer, and amount of compensation to be paid, where the employee refuses to permit the operation, makes further provision for cases of death resulting in one year, and provides that a recurrence of the hernia following radical operation shall be considered a separate hernia.

Acts in this country.[3]  A study of numerous decisions from various states whose laws make special provision for hernia cases, results in finding that the limitation placed on benefits in such cases is consistently adhered to.  See *Williams* v. *Industrial Commission*, 68 Ariz. 147, 202 Pac. 2d 898, *Nelson Electric Manufacturing Company* v. *Lige Cartwright, et al.*, (Okla.), 277 Pac. 2d 163; *Furferi* v. *Pennsylvania Railroad Company*, 117 N. J. L. 508, 189 Atl. 126.

Appellant cites no authority to the contrary, but simply contends that under a liberal construction of the Act, he is entitled to permanent partial disability benefits.  Also, he feels that his hernia was accompanied by complications.  As to the latter contention, we agree with a statement made under "Conclusions," found in the Opinion of the Commission, and heretofore quoted, *viz*:

"The very occurrence of hernia denotes a weakness of the fascia, and consequently we do not believe a weakened fascia gives rise to entitlement to benefits for permanent partial disability aside and apart from benefits paid for disability for the hernia itself."

Of course, we are so well committed to the policy of giving a liberal and broad construction to the provisions of the Workmen's Compensation Act, as to require no citation of authority.  However, this does not mean that the plain provisions of the Section can be ignored.  Appellant says, "The Section under consideration provides for death benefits in the event death occurs either from the hernia or the operation thereof; we see no reason to exclude benefits for permanent partial disability."  Without discussing the logic of that assertion, let it be said that the best reason for excluding benefits for permanent partial disability is simply that the Section does not provide for them.  It is true that Jobe apparently received an unusually severe hernia, and we have no reason to doubt that he will be unable to perform some of his previous work in the usual manner.  As stated by

---

[3] According to the text, including three federal acts, and four territorial acts, there are twenty-two American Workmen's Compensation Acts that do not have a special provision relating to hernia.

Dr. Joseph A. Buchman of Little Rock, "* * * possibly he should never be allowed to do heavy manual labor."[4] All examining physicians (4) agreed that the operation was satisfactory, and Doctors Buchman and Calaway stated that they were unable to account for the undue amount of pain.[5] While Jobe suffered a double hernia, he would not be entitled, because of that fact, to additional benefits, since both injuries arose from the same occurrence, — nor is this fact emphasized by appellant.

Probably the vast majority of hernia cases follow the pattern of appellant's left hernia, i. e., there is a period of temporary discomfort and disability, after which the injured person returns to work. Even then, it is frequently necessary that one avoid a strain. While the blow on the right side has caused more suffering and more disability than normally results, still such suffering and disability are the result of a hernia, and the statute does not provide additional benefits because a particular injury in this category happens to be more severe than the usual injury.

The judgment is affirmed.

WARD, J., not participating. JOHNSON, J., dissents.

[4] Also, from Dr. Monfort's testimony: "Well, I have told him flatly that I thought he would have to quit lifting 200 and 400 pound stones and timbers and straining to start machines, etc., knowing that he has always been what is colloquially known as a horse of a man."

[5] According to Dr. Buchman: "The left hernia is well healed. There is no tenderness along the scar. The fascia is tight."