2010 Ark. App. 554

**Michael RIGGS, Appellant**

v.

**B & S CONTRACTORS, INC. and Continental Western Insurance Co., Appellees.**

**No. CA 10–24.**

Court of Appeals of Arkansas.

Sept. 1, 2010.

---

17. (Repl.2006).

18. *Stigger v. State*, 2009 Ark. App. 596, 2009 WL 2958386.

19. 97 Ark. App. 285, 248 S.W.3d 487 (2007).

20. *Stigger, supra.*

James E. Evans, Jr., Evans & Evans Law Firm, Springdale, AR, for appellant.

William C. Frye, Frye Law Firm, P.A., North Little Rock, AR, for appellee.

LARRY D. VAUGHT, Chief Judge.

Appellant Michael Riggs suffered a compensable injury while working for appellee B & S Contractors. He previously sought temporary-total disability (TTD) benefits for a period of time, but an administrative law judge (ALJ) denied his claim. After a change of physician and additional treatment, he went before another ALJ, seeking additional medical benefits and additional TTD; the ALJ denied his claims in their entirety, and the Commission affirmed and adopted the ALJ's opinion. Riggs now brings this appeal, challenging only the denial of TTD benefits.[1] He also appeals from the Commission's dismissing his claim "in its entirety." Because the Commission's decision displays a substantial basis for the denial of relief and the dismissal, we affirm.

Riggs was a mason for B & S.[2] He was injured in September 2006 when coworkers dropped a heavy ladder on him. He presented to the Northwest Medical Center with shoulder and back pain. He was diagnosed with a contusion, prescribed medication, and excused from work for two days. A radiation report dated September 14, 2006, showed disc-space narrowing at L3–4, L4–5, and L5–S1, and some degenerative changes, but no evidence of an acute injury.

On February 8, 2007, Riggs began seeing Dr. Kostantin Berestnev. He diagnosed Riggs with low back pain "and some psychosocial circumstance with the way his injury was handled which, in my opinion, also contributes to and exacerbates patient's condition." He released Riggs to work on February 8, 2007, with a twenty-pound lifting restriction. An x-ray on that date showed degenerative changes with anterior bone spurring throughout the lumbar spine and anterior bone spurring throughout the thoracic spine. An MRI also revealed degenerative changes throughout the lumbar spine. A week later, Dr. Berestnev noted that Riggs had positive Waddell signs (indicating pain symptoms, which are usually psychological not organic). The doctor recommended medication and physical therapy. On March 1, 2007, Dr. Berestnev wrote that Riggs's low-back pain was healing and released him to his regular duties as a mason. Despite this, Riggs continued to complain of back and leg pain.

At a hearing held August 14, 2007, Riggs sought TTD from October 6, 2006, to February 8, 2007, and from March 1, 2007, to a date to be determined. The parties reserved the issue of additional medical treatment. An ALJ ultimately ruled that Riggs was not entitled to additional TTD. In finding that he was not entitled to TTD from October 2006 to Feb-

---

1. Although B & S addressed the matter in its brief, Riggs is not appealing from the denial of additional medical treatment. As such, we do not consider the matter on appeal.

2. He had done masonry work for the twenty-five years preceding his workplace accident.

ruary 2007, the ALJ noted that Riggs had been laid off by B & S, that he collected maximum unemployment benefits, and that he was returned to work without restrictions two days after his initial visit to the emergency room. Regarding the period after March 2007, the ALJ noted that Riggs was released from Dr. Berestnev on March 1, 2007, and that Dr. Berestnev opined that Riggs could return to his duties as a mason. Riggs did not appeal the ruling.

Riggs then sought and received a change of physician. He presented to Dr. Cyril Rabin in November 2007. Dr. Rabin treated Riggs conservatively. Subsequent MRI and CT scans in March 2008 revealed annular tears and disc derangement at four lumbar levels. Dr. Rabin wrote that Riggs would not be released back to heavy construction again.

Riggs presented to Dr. Luke Knox for an independent medical evaluation on April 14, 2008. He opined that Riggs's current problems were related to the workplace accident and that, while Riggs had degenerative changes, his current complaints were secondary to his injury. Dr. Knox thought that the current course of treatment was reasonable, but he opined that no further treatment was required, that there would be some permanency to the claim, and that Riggs had reached maximum medical improvement.

In a letter to counsel on May 8, 2008, Dr. Rabin wrote that Riggs would never return to work in the heavy construction industry. Four days later, he wrote that Riggs was disabled from the time he first saw Riggs until present. He did not believe that Riggs had reached maximum medical improvement, because surgical intervention had been suggested for Riggs's back.

A hearing was held before another ALJ on January 20, 2009, where the parties litigated Riggs's entitlement to surgical treatment and to TTD from August 14, 2007, to a date to be determined. Riggs testified that his condition had not changed since August 2007 and that he was currently taking Percocet, Celebrex, Ultram, Oxycontin, Celexa, Soma, and Flexeril. Riggs explained that the medications cause him to be intoxicated, and he was hoping to have surgery so he could discontinue his medication regime. During the hearing, Riggs was shown two videos. The videos showed him carrying ladders, handing sheet rock to his wife on a ladder, and generally moving without distress. In response to the footage, Riggs testified that he was on medication while doing that work, that he was confined to couch rest for a few days thereafter, and that he had not tried anything so vigorous since.

The ALJ also considered deposition testimony from Dr. Rabin. His first recommendation was conservative, non-operative care. His second recommendation was surgery, including a 360–degree fusion of the lumbar spine and decompression discectomy. Since seeing Riggs, he had not noted any Waddell signs. But Dr. Rabin was further concerned about doing surgery in light of Dr. Berestnev's exam, Dr. Knox's exam, and the video surveillance.

In light of the video and the evidence of positive Waddell signs, the ALJ opined that Riggs was overstating his difficulties to his doctors and found that Riggs was entitled to neither surgical treatment nor additional TTD. Regarding TTD, the ALJ stated that Riggs failed to prove either that he had reentered his healing period or that he was rendered totally disabled. In so finding, the ALJ relied on Dr. Knox's opinion that Riggs had reached maximum medical improvement, evidence from the videos, and positive Waddell signs identified by two physicians. The Commission

affirmed and adopted the opinion of the ALJ, and this appeal followed.

Riggs brings two points on appeal. First, he argues that the Commission erred in not finding that he was entitled to additional TTD benefits. He contends that he is still within his healing period, and thus is entitled to TTD. While he goes over the medical records multiple times in his argument, he mostly relies on Dr. Rabin's assessment that he is disabled and will be until he has surgery. He also relies on evidence that part of his disability will be permanent. Second, he argues that the Commission erred in dismissing his claim in its entirety. He contends that he has a right to file claims as long as they are filed within the statute of limitations and that he should not be foreclosed from making claims for additional benefits in the future.

In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirm if that decision is supported by substantial evidence. *Smith v. City of Ft. Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Williams v. Prostaff Temps.*, 336 Ark. 510, 988 S.W.2d 1 (1999). The issue is not whether the reviewing court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, this court must affirm the decision. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999). Where the Commission denies benefits because the claimant has failed to meet his burden of proof, the substantial-evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief. *Neal v. Sparks Reg'l Med. Ctr.*, 104 Ark. App. 97, 289 S.W.3d 163 (2008).

The Commission has the duty of weighing medical evidence, and the resolution of conflicting evidence is a question of fact for the Commission. *Stone v. Dollar General Stores*, 91 Ark. App. 260, 209 S.W.3d 445 (2005). The interpretation of medical opinion is also for the Commission, and its interpretation has the weight and force of a jury verdict. *Oak Grove Lumber Co. v. Highfill*, 62 Ark. App. 42, 968 S.W.2d 637 (1998). But the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Hill v. Baptist Med. Ctr.*, 74 Ark. App. 250, 48 S.W.3d 544 (2001).

When an injured employee is totally incapacitated from earning wages and remains within his healing period, he is entitled to temporary-total disability. *Searcy Indus. Laundry, Inc. v. Ferren*, 92 Ark. App. 65, 211 S.W.3d 11 (2005). The healing period continues until the employee is as far restored as the permanent character of his injury will permit, and it ends when the underlying condition causing the disability has become stable and nothing in the way of treatment will improve that condition. *Carroll Gen. Hosp. v. Green*, 54 Ark. App. 102, 923 S.W.2d 878 (1996). The determination of when the healing period has ended is a factual determination for the Commission and will be affirmed on appeal if supported by substantial evidence. *Id.*, 923 S.W.2d at 879.

The Commission's decision displays a substantial basis for the denial of TTD benefits. Because an ALJ had previously denied TTD benefits, Riggs was obligated to show that, since the last hearing, he had reentered his healing period and become totally incapacitated from earning wages. Riggs admitted that his condition had not changed since the previous hear-

ing. Therefore, at a minimum, his condition was the same as when he was previously denied TTD benefits. Additionally, two doctors found positive Waddell findings and there was video [7]evidence suggesting that Riggs was exaggerating his symptoms. Finally, there was evidence—a medical opinion—that Riggs's injury would not improve and that he had reached maximum medical improvement.[3]

Riggs's argument for reversal heavily relies on Dr. Rabin's opinion that he is a candidate for surgical intervention. This argument is unavailing. First, the Commission found that Riggs was not entitled to the surgery, and Riggs has not appealed from that ruling. Second, Dr. Rabin's first recommendation was conservative treatment, not surgery. And in his deposition, he was concerned about performing surgery on Riggs given the other medical evidence and video surveillance. Third, the Commission did not have to accept Dr. Rabin's opinion regarding disability in light of other evidence in the record suggesting otherwise.

As for Riggs's argument that the Commission erred by dismissing his claim in its entirety, Riggs misinterprets the meaning of the order. Here, Riggs only made claims for additional medical treatment in the form of surgical intervention, TTD, and attorney's fees. The Commission found that he was entitled to none of these, and Riggs presented no other issues for the Commission to adjudicate. Thus, these claims were properly dismissed. Of course, this dismissal does not preclude future claims, such as for permanent disability benefits or future medical treatment.

In light of evidence showing that Riggs may have been exaggerating his symptoms and in absence of evidence showing that

Riggs reentered his healing period after previously being denied TTD benefits, the Commission's opinion displays a substantial basis for the denial of [8]relief, and we affirm.

Affirmed.

GRUBER and BROWN, JJ., agree.

---

**3.** Riggs argues that the evidence supports a finding that he is entitled to some type of permanent disability, but his claim is not one for permanent disability.