MINNESOTA MINING & MANUFACTURING and
Old Republic Insurance Company *v.* Theodore BAKER

98-1290                                            989 S.W.2d 151

Supreme Court of Arkansas
Opinion delivered March 25, 1999

*Barber, McCaskill, Jones & Hale, P.A.,* by: *Gail Ponder Gaines,* for appellants.

*Davis, Mitchell & Davis,* by: *Zan Davis,* for appellee.

*Rose Law Firm,* by: *Phillip Carroll,* for *amicus curiae* ALCOA.

*Kaplan, Brewer & Maxey, P.A.,* by: *Silas H. Brewer, Jr.,* for *amicus curiae* John Cook.

W H. "DUB" ARNOLD, Chief Justice. This case is before us on petition for review from the Arkansas Court of Appeals. Appellants, Minnesota Mining & Manufacturing (3M) and Old Republic Insurance Company, appealed the Workers' Compensation Commission's decision that Theodore Baker is entitled to disability benefits for an occupational noise-induced hearing loss. For reversal, appellants contended that the Commission's finding that appellee sustained a compensable hearing loss is not supported by substantial evidence and that appellee's claim is barred by the statute of limitation. The Court of Appeals affirmed the Commission's decision, concluding that substantial evidence existed to support the Commission's finding that appellee proved his hearing loss was caused by his employment and that the statute of limitation cannot apply to scheduled injuries involving hearing loss where there is no loss of wages. *Minnesota Mining & Mfg. v. Baker,* 63 Ark. App. 160, 975 S.W.2d 863 (1998).

The appellants petitioned this Court for review, contending that only the General Assembly can create a statute of limitation and only the General Assembly can exempt a subset of cases from the statute of limitation. Appellants assert that the legislature did not exempt scheduled injury hearing loss workers' compensation claims from the applicable statute of limitation, nor does a reading of the statute and cases interpreted mandate such a result. Appellants assert that to hold otherwise will subject the Workers' Compensation Commission and courts to a flood of stale cases where

claims are brought for no reason other than a retroactive change in law. Given the specific facts presented in this case, we agree.

Baker's employment with appellant 3M began on August 18, 1977, and continues. On February 23, 1978, a baseline hearing test was administered to appellee, the results of which demonstrated significant bilateral hearing deficiencies. Appellee underwent subsequent tests that demonstrated no clinically significant decrease in hearing from the February 1978 baseline test through the time he filed his claim in February 1992.

Appellants contend that the Commission's finding that Baker sustained a compensable hearing loss is not supported by substantial evidence and that it is further barred by the applicable two-year statute of limitation. We granted appellant's petition for review because this case presents an opportunity to address the statute-of-limitation issue with regard to claims for work-related injuries where no loss of wages occurred. We also address whether there is substantial evidence to support the Commission's determination that Theodore Baker's injury was compensable.

■ ■ It is well settled that upon a petition for review, we consider the case as though it were originally filed in this Court. *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998); *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998). On appeal of a workers' compensation case from the Court of Appeals to this Court, we view the evidence in a light most favorable to the Commission's decision, and we uphold that decision if it is supported by substantial evidence. *Ester v. National Home Centers, Inc.*, 335 Ark. 356, 981 S.W.2d 91 (1998); *Golden v. Westark Community College*, 333 Ark. 41, 969 S.W.2d 154 (1998); *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997). Substantial evidence exists if reasonable minds could reach the same conclusion. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission. *Id.* The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds

could reach the Commission's conclusion, we must affirm its decision. *Id.*

At the administrative hearing on his claim, Baker testified that his employment with 3M began on August 18, 1977, and that he initially was assigned to work in the bagging department where 3M's principal product, roofing granules, are prepared for shipping. According to Baker, he began experiencing moderate to severe hearing loss within three to four months of his employment, and the hearing tests he took within the following two-month period showed significant hearing loss.

Subsequent tests, including an audiogram administered in December 1992, showed no significant change in his hearing from the results of the February 23, 1978, hearing test. Baker testified that he was transferred to another department shortly after his initial hearing examination in 1978. Documentary medical evidence corroborated Baker's testimony regarding his hearing loss.

Dr. Daniel J. Orchik opined in a report dated June 2, 1993, that, based on the appellee's medical records, work history, and other relevant history, Baker suffers from noise-induced hearing loss related to his employment with 3M. He noted that during the six-month period between the time he was hired and the time of his first audiological exam, the appellee was exposed to workplace noise as high as ninety-nine decibels without the benefit of any hearing protection. Appellee worked an average of forty-seven hours weekly, including some twelve-hour shifts. Dr. Orchik agreed that appellant's audiogram results did not change significantly between his baseline or initial test in February 1978 and the test he underwent in December 1992. He concluded that Baker suffered 46.25 percent impairment in the left ear, 38.8 percent in the right, and binaural impairment of 39.82 percent.

■ ■ Appellant 3M contends that because appellee did not experience a significant decrease in his hearing after the February 1978 baseline audiogram, the Commission could not find that his hearing loss is related to his employment. It is well established that it is within the Commission's province to weigh all the medical evidence and to determine what is most credible. *Ester v. National Home Centers, Inc.*, 335 Ark. 356, 981 S.W.2d 91 (1998);

see also, *McClain v. Texaco, Inc.*, 29 Ark. App. 218, 780 S.W.2d 34 (1989). The Court of Appeals held, and we agree, that Dr. Orchik's opinion, coupled with Baker's testimony that he did not have a hearing impairment prior to becoming employed by 3M, and the fact that he was transferred from the bagging station, 3M's noisiest job site, shortly after his first hearing test, constitute substantial evidence to support the Commission's finding that appellee proved his hearing loss was caused by his employment with 3M.

Appellants next contend that Baker's claim was barred by the statute of limitation. It is undisputed that appellee's hearing deficiencies were established and known following hearing tests administered on February 23, 1978. The parties also agree that appellee has not suffered any loss of earnings because of the injury.

The case at bar presents an issue of first impression for this Court because whether the statute of limitation applies to scheduled injuries has yet to be decided by this Court. The beginning point in interpreting a statute is to construe the words just as they read and to give them their ordinary meaning. *Arkansas Dept. of Health v. Westark Christian Action*, 322 Ark. 440, 910 S.W.2d 199 (1995). The basic rule of statutory construction is to give effect to the intent of the legislature, making use of common sense. *Office of Child Support Enforcement v. Harnage*, 322 Ark. 461, 910 S.W.2d 207 (1995); *Arkansas Dept. of Health v. Westark Christian Action*, 322 Ark. 440, 910 S.W.2d 199 (1995). Statutes relating to the same subject should be read in a harmonious manner, if possible. *L.H. v. State*, 333 Ark. 613, 973 S.W.2d 477 (1998); *City of Ft. Smith v. Tate*, 311 Ark. 405, 844 S.W.2d 356 (1993). All legislative acts relating to the same subject are said to be *in pari materia* and must be construed together and made to stand if they are capable of being reconciled. *Id.*

Because appellant filed his claim in February 1992, the commencing of the statute of limitation is controlled by Arkansas Code Annotated § 11-9-702(a)(1) (1987), which provides:

TIME FOR FILING. (1) A claim for compensation for disability on account of injury, other than an occupational disease and

occupational infection, shall be barred unless filed with the Commission within two (2) years from the date of injury.

■■ We have held that the time of injury means when an injury becomes *compensable*, not the date of the accident. *Donaldson v. Calvert-McBride Ptg. Co.*, 217 Ark. 625, 232 S.W.2d 651 (1950). Following this Court's 1950 decision in *Donaldson*, we held that a claimant's injury did not become a compensable one until he suffered a loss of earnings. Disability, which is compensable under our statute, is based upon incapacity to earn because of injury. *Arkansas Louisiana Gas Co. v. Grooms*, 10 Ark. App. 92, 661 S.W.2d 433 (1983). For purposes of commencing the statute of limitation under § 11-9-702(a)(1), an "injury" is not to be construed as "compensable" until (1) the injury develops or becomes apparent *and* (2) the claimant suffers a loss in earnings on account of the injury. Thus, the statute of limitation does not begin to run until *both* elements of the rule are met. *Hall's Cleaners v. Wortham*, 311 Ark. 103, 842 S.W.2d 7 (1992).

■ In a majority of jurisdictions, the statute of limitation generally begins to run on a workers' compensation claim for alleged hearing loss when the claimant is aware of his injury and aware that the injury is causally related to the working environment. See 4 Larson, *Workers' Compensation Law*, App. A-2C-1(1997). However, Arkansas is technically a "compensable injury" state. *Hall's Cleaners, supra.*

Appellants contend that the legislature surely did not intend that a gradual-onset occupational, noise-induced hearing loss would not have an applicable statute of limitation. This is so, according to appellants, because gradual-onset hearing loss by its very nature will *generally* not result in time missed from work or in a loss of earning capacity. We agree.

■ As the Court of Appeals correctly held, because the permanent injury suffered by appellee in this case affects only his hearing, the permanent injury may be reduced to a *scheduled* injury. See *Federal Compress & Warehouse Co. v. Risper*, 55 Ark. App. 300, 935 S.W.2d 279 (1996), and *Anchor Const. Co. v. Rice*, 252 Ark. 460, 479 S.W.2d 573 (1972).

Arkansas Code Annotated § 11-9-521(a)(16) (1987) provides:

> (a) An employee who sustains a permanent injury scheduled in this section shall receive, in addition to compensation for the healing period, weekly benefits in the amount of the permanent partial disability rate attributable to the injury, for that period set out in the following schedule:
>
> . . .
>
> (16) loss of hearing of both ears, one hundred fifty-eight (158) weeks[.]

Compensation for an injury scheduled in Ark. Code Ann. § 11-9-521(a) is payable to the injured worker without regard to subsequent earning capacity. These benefits are awarded more in the nature of an indemnity for physical or functional loss and are payable whether the worker is employed or unemployed and irrespective of what his wages or earning capacity may be. *Rash v. Goodyear Tire & Rubber Co.*, 18 Ark. App. 248, 715 S.W.2d 449 (1986).

As the Court of Appeals acknowledged, Professor Larson, in his treatise on workers' compensation law, sets forth the following reasons for awarding scheduled benefits:

> Under most acts, if an injury has left the claimant with a permanent bodily impairment, compensation for a specified number of weeks is payable without regard to presence or absence of wage loss during that period.
>
> . . . .
>
> [T]hese payments are not dependent on actual wage loss. *This is not, however, to be interpreted as an erratic deviation from the underlying principle of compensation law — that benefits relate to the loss of earning capacity and not to physical injury as such.* The basic theory remains the same; the only difference is that the effect on earning capacity is a *conclusively presumed* one, instead of a specifically proved one based on the individual's actual wage-loss experience. (Emphasis added.)

4 Larson, *Workers' Compensation Law,* § 58 (1997).

The Court of Appeals held that it is "clear that the legislature intended that compensation for scheduled injuries be awarded without regard to the statute of limitations in § 11-9-702(a)(1)." *Minnesota Mining & Mfg. v. Baker*, 63 Ark. App. at 167, 975 S.W.2d at 867. They further held that disability benefits for compensable injuries under other sections of the workers' compensation act continue until the employee's healing period has ended, and compensation for injuries scheduled by statute are limited to the period scheduled and do not extend until a cure is effected. Continuing, they held that in cases involving scheduled injuries, it is clear that a loss in earnings has no effect on the award of benefits. This is so, because the benefits are awarded in the nature of an indemnity for bodily impairment. They decided that if the court were to decide that the statute of limitation applies to scheduled injuries, the result would be that the injury would not become compensable until a loss in earnings occurred. In that case, workers such as the appellee who have not experienced a loss of earnings would never satisfy the requirements of a compensable injury. With this holding, we cannot agree.

Any statute of limitation will eventually operate to bar a remedy, and the time within which a claim should be asserted is a matter of public policy, the determination of which lies almost exclusively in the legislative domain, and the decision of the General Assembly in that regard will not be interfered with by the courts in the absence of palpable error in the exercise of the legislative judgment. *Owen v. Wilson*, 260 Ark. 21, 537 S.W.2d 543 (1976); *Hamilton v. Jeffrey Stone Co.*, 25 Ark. App. 66, 752 S.W.2d 288 (1988). We cannot agree with the Court of Appeals that the General Assembly intended no statute of limitation for scheduled injuries. As previously stated, statutes relating to the same subject should be read in a harmonious manner, if possible. *L.H. v. State*, 333 Ark. 613, 973 S.W.2d 477 (1998); *City of Ft. Smith v. Tate*, 311 Ark. 405, 844 S.W.2d 356 (1993). All legislative acts relating to the same subject are said to be *in pari materia* and must be construed together and made to stand if they are capable of being reconciled. *Id.* Arkansas Code Annotated §§ 11-9-702(a)(1) (1987) and 11-9-521(a)(16) (1987) can easily be read harmoniously when applying the Larson theory.

The Court of Appeals cited Larson's treatise on Workers' Compensation Law for the proposition that for scheduled injuries, compensation for a specified number of weeks is payable *without regard to the presence or absence of wage loss* during that period and that the effect on earning capacity is a *conclusively presumed* one, instead of a specifically proved one based on the individual's actual wage-loss experience. This theory means that a claimant seeking benefits for a scheduled injury is not required to prove a loss of earnings or earning capacity in order to be entitled to compensation. The impact on a claimant's earnings or earning capacity is *conclusively presumed.*

Applying this theory to the two-prong test recited in *Hall's Cleaners, supra,* a work-related noise-induced hearing-loss injury does not become compensable until (1) the injury develops or becomes apparent and (2) the claimant suffers a loss in earnings on account of the injury, *which loss is conclusively presumed.* Because the statute of limitation does not begin to run until both elements of the rule are met, and because of the *conclusive presumption* as to loss of earnings, which satisfies the second element, the statute of limitation with respect to work-related noise-induced hearing loss begins to run when the hearing loss becomes apparent to the claimant.

Here, appellee became aware of his hearing loss in February 1978. The statute of limitation began to run in February 1978, and because his hearing did not continue to deteriorate, appellee's claim became time-barred in February 1980, pursuant to Arkansas Code Annotated § 11-9-702(a)(1) (1987). Although appellee's claim may well be meritorious, we cannot extend the time for him to file his claim by some twelve years. The burden of filing a claim within the statute of limitation is on the claimant. *Plunkett v. St. Francis Valley Lumber Co.,* 25 Ark. App. 195, 755 S.W.2d 240 (1988); *St. John v. Arkansas Lime Co.,* 8 Ark. App. 278, 651 S.W.2d 104 (1983). The court cannot extend the period of the statute of limitation on appeal, despite the fact that a claim may be meritorious. *Miller v. Everett,* 252 Ark. 824, 481 S.W.2d 335 (1972).

We thus conclude that although substantial evidence existed to support the Commission's finding that appellee proved his hearing loss was caused by his employment, appellee's claim is barred by the applicable statute of limitation.

Reversed.