AVERITT EXPRESS, INC., American Casualty Company *v.*
Gary D. GILLEY

CA 08-152                                                  289 S.W.3d 118

Court of Appeals of Arkansas
Opinion delivered November 5, 2008

*Bridges, Young, Matthews & Drake, PLC,* by: *Michael J. Dennis,*
for appellants.

*McDaniel & Wells, P.A.*, by: *Phillip Wells*, for appellee.

WENDELL L. GRIFFEN, Judge. On November 27, 2007, the Workers' Compensation Commission found that Gary Gilley had sustained 12% permanent physical impairment and 20% wage-loss disability. Averitt Express, Inc., and its carrier, American Casualty Company, challenge both the physical-impairment rating and the award of wage-loss disability, contending that neither decision is supported by substantial evidence. We affirm, as both awards are supported by substantial evidence.

*Facts*

At the time of the hearing, appellee was age fifty-nine and had a high school diploma. He had two years of military experience, and since November 1967, he had been an over-the-road truck driver. He began working for Averitt in January 2005 and made $1000 to $1200 per week. Appellee suffered an admittedly compensable injury on June 1, 2005, when he slipped on the side of a truck and suffered a torn rotator cuff on his left shoulder. He stopped working for Averitt in February 2006, just prior to undergoing surgery.

Appellee received treatment from Dr. Henry Stroope. Dr. Stroope released appellee to work on July 26, 2006, but appellee did not return to Averitt. Instead, he found other employment driving a dump truck for his friend, Gary Barker. When appellee worked for Averitt, he drove eleven hours a day, per government regulations. His job also required him to hook up trailers and to load and unload heavy appliances and freight. Appellee testified that his condition prohibited him from doing that work. On cross-examination, appellee admitted that no doctor had forbidden him from driving over the road, though he explained that he did not return to Averitt because it could not offer him any work within his abilities. He stated that he was unable to pick up his three-year-old son or four-year-old daughter and that his wife had to help put his belt in the back loops. Appellee's job driving the dump truck only paid $350 per week, but he only drives fifteen to twenty minutes at a time. Other than driving, the only thing he does with the dump truck is flip a switch and push a button to load and unload the truck.

By letter dated August 22, 2006, Dr. Stroope assessed appellee with an impairment rating of 10% to his upper extremity, which translated to 6% to the body as a whole. By agreement of the

parties, however, appellee underwent an independent medical evaluation on March 21, 2007. Dr. David Collins, an orthopedic surgeon, agreed that appellee suffered a full thickness rotator cuff tear and decreased range of motion in his left shoulder. Dr. Collins wrote:

> It would appear that he is well suited for his present occupation. I believe that he has reached maximum medical improvement. He has sustained permanent partial impairment as it relates to his work related injury and its treatment on the basis of anatomic alteration of the skin, subcutaneous tissue, deltoid muscle, acromion process, coracoacromial ligament, subacromial bursa and the rotator cuff. Impairment is equal to 20% to the upper extremity, equal to 12% to the body as a whole.
>
> I believe there has been alterations of coracoacromial archway that render his shoulder more weak in forward elevation than one might expect. I believe there is limited capacity to recover active forward elevations even with superb restoration of muscular strength.

An administrative law judge (ALJ) found that appellant suffered 12% permanent physical impairment as well as 20% wage-loss disability. In a separate opinion, the Commission affirmed the findings of the ALJ. While it recognized Dr. Stroope's assessment, it relied on Dr. Collins's findings. Regarding wage loss, the Commission found that appellee was unable to return to work with Averitt due to his injury, his surgery, and his physical limitations.

### Standard of Review

Appellants challenge both the 12% permanent physical-impairment rating and the 20% wage-loss disability award. When reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirm if that decision is supported by substantial evidence. *Smith v. City of Ft. Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Williams v. Prostaff Temps.*, 336 Ark. 510, 988 S.W.2d 1 (1999). The issue is not whether the reviewing court might have reached a different result from the Commission; if reasonable minds could reach the

result found by the Commission, we are required to affirm. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999). Our review is limited to the findings of the Commission. *Logan County v. McDonald*, 90 Ark. App. 409, 206 S.W.3d 258 (2005).

### Permanent-Impairment Rating

██ Under two separate points, appellants challenge the 12% permanent impairment rating. First, they assert that the Commission erred in relying on Dr. Collins, who only saw appellee once, rather than Dr. Stroope, appellee's treating physician. Appellants correctly state that the Commission may give greater weight to a treating physician rather than a doctor who sees a patient once for an independent evaluation. *See Guy v. Breeko Corp.*, 310 Ark. 187, 832 S.W.2d 816 (1992). However, the Commission is not required to do so. *See, e.g., Roberson v. Waste Mgmt.*, 58 Ark. App. 11, 944 S.W.2d 858 (1997) (holding that a doctor's medical records supported the Commission's findings despite the fact that the doctor only examined the claimant for ten minutes). The opinion of a doctor who performs a one-time examination of the claimant can constitute substantial evidence of the Commission's opinion.

██ Second, appellants contend that there was no evidence to show that Dr. Collins used the *AMA Guides* to make an evaluation of permanent impairment. They rely on the dissenting Commissioner's analysis of the impairment rating, which determined that Dr. Collins's findings could not be reconciled with the *Guides*. While Dr. Collins does not cite to the *AMA Guides* when stating his opinion of appellee's impairment rating, Arkansas does not require any specific "magic words" with respect to expert opinions; said opinions are to be judged upon the entirety of the opinion, not validated or invalidated on the presence or lack of "magic words." *See Wackenhut Corp. v. Jones*, 73 Ark. App. 158, 40 S.W.3d 333 (2001). Further, the Commission found that the *AMA Guides* support Dr. Collins's rating, and appellants fail to present a record (or argument except for citation to the dissenting Commissioner) showing the contrary.

### Wage-Loss Disability

Appellants also contend that the award of wage-loss disability is not supported by substantial evidence. They observe that

appellee's treating physician returned him to work with no physical restrictions and assert that the Commission's finding that he had significant physical restrictions that prevented him from working full-time with Averitt was not supported by substantial evidence.

Pursuant to Ark. Code Ann. § 11-9-522(b)(1) (Repl. 2002), the Commission has the authority to increase a claimant's disability rating when a claimant has been assigned an anatomical impairment rating to the body as a whole. *See Lee v. Alcoa Extrusion, Inc.*, 89 Ark. App. 228, 201 S.W.3d 449 (2005). This wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *McDonald, supra.* In considering wage-loss disability, the Commission can consider such factors as the claimant's age, education, work experience, and "other matters reasonably expected to affect his or her future earning capacity." Ark. Code Ann. § 11-9-522(b)(1).

Appellants heavily rely on evidence that appellee did not attempt to return to Averitt after his surgery. They are correct in stating that factors such as motivation to work, lack of interest, and attempts to return to work are valid factors to be considered in a determination of an award of wage-loss disability. *See, e.g., SSI, Inc. v. Lohman*, 98 Ark. App. 294, 254 S.W.3d 804 (2007); *Weyerhaeuser Co. v. McGinnis*, 37 Ark. App. 91, 824 S.W.2d 406 (1992). But the Commission considered evidence, in the form of appellee's testimony, that he was unable to continue his duties with the employer. The Commission was entitled to rely upon this testimony, and once the Commission finds a claimant credible, we are bound by that determination. *See Lohman, supra.*

■ The record shows that appellee was fifty-nine years old at the time of the hearing and that most of his career was spent driving long-haul trucks. He received a permanent-impairment rating and still suffered from pain that restricts his life activities. Appellee cannot use his left upper extremity for long periods of time; therefore, it is reasonable to believe that appellee would be unable to return to driving over the road for eleven hours a day. The record supports the Commission's decision to award 20% wage-loss disability, and we affirm on this point as well.

Affirmed.

HART, GLADWIN, BAKER, and HUNT, JJ., agree.

PITTMAN, C.J., ROBBINS, VAUGHT, and HEFFLEY, JJ., dissent.

L ARRY D. VAUGHT, Judge, dissenting. I dissent from the majority because I believe that substantial evidence does not support the Commission's decision. Accordingly, I would reverse and remand.

There are two issues in this case: whether substantial evidence supports the Commission's award of 12% impairment and 20% wage-loss. On both issues, the majority answers yes; however, the majority (as did the Commission) fails to actually state what that substantial evidence is.

Regarding the 12% impairment rating, the majority concludes that substantial evidence supports the award because the Commission can give greater weight to an independent medical physician over the treating physician. *See Roberson v. Waste Mgmt.*, 58 Ark. App. 11, 944 S.W.2d 858 (1997). While this proposition of law is correct, the majority fails to identify any facts supporting the Commission's decision to weigh the medical evidence in this way.

Arkansas Code Annotated section 11-9-522(g)(1)(A) (Repl. 2002), requires that the Commission adopt an impairment-rating guide to be used in the assessment of anatomical impairment. The Commission adopted the *American Medical Association's Guide to the Evaluation of Permanent Impairment* (4th ed. 1993), to be used in this assessment. *See* Arkansas Workers' Compensation Commission Rule 34. While Rule 34 does not require that a doctor specifically state that he or she is issuing an impairment rating as per the *AMA Guide*, the rule does require that the *AMA Guide* be used in the assessment of anatomical impairment. *Id*.

The Commission found that "[t]he *Guides* at Table 3, page 3/20 support Dr. Collins's assessment of a 12% whole-body impairment rating."[1] The majority opinion agreed, stating that "the Commission found that the *AMA Guides* support Dr. Collins's rating." However, *AMA Guide* Table 3 page 3/20 is merely a chart that converts upper-extremity ratings to whole-body ratings. This table does not demonstrate how an upper-extremity rating is assessed.

The *only* finding made by the Commission on the impairment-rating issue was that "the rating assigned by Dr. Collins was based on 'anatomic alteration of the skin, subcutane-

---

[1] Dr. Collins's report did not include this information.

ous tissue, deltoid muscle, acromion process, coracoacromial bursa and the rotator cuff.' " Based on that finding, the Commission concluded that "the record indicates that these findings were objective and not within the claimant's voluntary control." Again, the Commission and the majority fail to cite the *AMA Guide* or any other facts in the record that support this conclusion.

While, as the majority stated, no magic words are required, citing the *AMA Guide* and not applying it to the specific injury makes a mockery out of section 11-9-522(g)(1)(A). I would remand for the Commission to apply the *AMA Guide* and make findings of fact, which we can review on appeal.

I would also remand the 20% wage-loss award to be reexamined in light of the findings on the impairment rating.

PITTMAN, C.J., and ROBBINS and HEFFLEY, JJ., join.